The Judges delivered their opinions.
JUDGE TUCKER.
This cause, which has been eight and twenty years nearly depending, had its origin in a tortious partition and sale of lands held in joint-tenancy between James Moon, of full age, and Jacob Moon, an infant under the age of twenty-one years, by the former, without the consent of the latter. The partition is alleged to have been made some time in the year 1755; and the metes and bounds are particularly set forth in the bill. In June, 1755, James Moon conveyed the part which he had allotted to himself, and which, by a survey made in the cause, is found to contain 504 acre's, to Magnus Tate, by deeds of lease and release, leaving to his younger 601 brother 292 acres, as his ‘'’moiety of a tract which contained 796 in the whole. Tate in the year 1762 sold to Andrew M’Donald ; by whom the original bill was brought, twenty years afterwards, against Jacob Moon, the younger brother, to com-, pel him to confirm the partition so made, and to release all claim, &c. to that part of the whole tract, which is comprised within the lines above described. The grounds of equity stated in the bill are, that the partition was made by Henry Bowene, Jacob’s guardian ; and that when he came of age he (Jacob) pretended to call in question the justice of the decision, and threatened to compel another partition of the land; whereupon Magnus Tate (with the consent of James, the elder brother, who agreed that the same should be deducted out of the price of the land) agreed with Jacob, that he should release to him all claim which he might have to the before described land (stated to contain 337 1-2 acres, or an exact moiety of the lands as held by the patent) in consideration of 111., current money, which Tate actually paid him.
The answer of Jacob Moon denies that H. Bowene was his guardian, or that any such division as in the bill is set forth was ever made with his (the respondent’s) consent and approbation ; and declares that he *239 believes James Moon made such a conveyance as in the bill mentioned to Magnus Tate; but expressly denies that he ever agreed to such a division, as in the bill is set forth ; only so far as it went through the cleared land according to the line first run, which is now much altered, and greatly to his injury and disadvantage; that in consideration of his agreeing to what is in his answer set forth, he received the 111.; and that he is, and always has been, ready to make a fair, just and equitable division, &c.
Magnus Tate (whose deposition, on account of apparent interest, was objected to be read at the hearing) deposes, that he purchased a tract of land from James Moon for 337 1-2 acres; being half of the tract held jointly between James and Jacob; and, having it divided before Jacob came of age, a dispute arose; Jacob alleging that James has laid off more upon the water than was his right; and that they agreed, after Jacob came of age, and James paid Jacob 111. in consideration of confirming the line laid out by James for the deponent; whereupon a deed was made and executed by James to himself.
Benjamin Thornbury deposes nearly to the same effect. Another ^witness, James M’Donald, swears that Jacob Moon frequently shewed him the line, and observed it was the division line between himself and the witness’s father, the complainant. These are all the witnesses on the part of the plaintiff. Two witnesses depose to conversations between James and Jacob Moon, which go to support that of the answer, which restrains Jacob’s agreement to the line run, to that part which went through the cleared land.
I have already said, that the commencement of this dispute was founded in a tortious attempt byr one joint-tenant, of full age, to sever the joint-tenancy by an unfair and unequal partition during the infancy of the other joint-tenant. The deeds, as set forth in the bill, import to convey an equal moiety by metes and bounds: and Magnus Tate’s deposition is to the same effect.
The infant probably was deceived into a supposition that the line run did in fact divide the land into two equal parts; though his own observation, as far as the cleared land went, shewed him that his brother had taken to himself the far greater proportion of the most valuable land. His complaint was confined to that object, probably not knowing, or even suspecting, that his brother, instead of one half, had taken more than five eighths of the whole tract to his own share. There was either fraud, or palpable mistake on the part of James and Magnus Tate. There was evidently misrepresentation on their part to Jacob ; since the deeds import to convey a moiety only. There was consequently mistake on the part of Jacob, induced by misrepresentation on the part of his brother, and of Tate. The complainant does not pretend that he was a purchaser without notice. He must therefore be presumed to have notice of all that he has stated in his bill. I think the answer clearly and fully supported by circumstances, as well as by the evidence of the two Browns. The objection to Magnus Tate’s deposition also appears to me to be well founded. Bor, if there was originally any fraud in the case, he can scarcely be presumed quite clear of it. At all events, His being both the purchaser and the seller of the lands creates a presumption, prima facie, that he is interested in the event of the suit. There is nothing in the record to countervail that presumption. I therefore think the Chancellor’s decree erroneous, in reversing that of the County Court directing an equal partition of the lands to 603 be made; beginning at the point *A. in the plat returned by the surveyor, and pursuing the line A. B. as far as the same went through the cleared lands, at the time of the agreement made between James and Jacob, and, from that point, to the, back line of the lands, along the dotted line B. E. in the plat, so as to divide the same into two equal moieties; assigning to the complainant the lands on the north, and to the defendant those on the south of that line; and that the remainder of the decree, as far as is consistent with such a division, be affirmed, and the cause sent back to be proceeded in accordingly.
JUDGE EOAjXTE.
It appears, as upon the face of the bill itself, that M. Tate was an incompetent witness, as he is therein said to have conveyed the land in controversy according to the lines claimed by the appellees, and was therefore interested to establish them. I do not know’, however, that the result of my opinion on the case, would be varied, admitting his testimony to have its full weight: or, in other words whether his testimony may not be reconciled with the statement made in the answer (after a denial of the division as stated) and proved by other testimony, and be satisfied w'ith considering the line to have been established only from A. to B., after James Moon came of age; and, being established up to that point only, as by the answer and testimony, it resulted that the partition line should be completed, so as to divide the tract into two equal parts, which is done by the dotted line B. E.
It may be very probable, independently of the testimony in the cause, that the line was actually run up to a certain point only, and an ideal line contemplated by the parties for the residue, so as to make an equal division: and this notwithstanding the payment of the 111. to the appellant; which may have found its consideration in the superior value of the land (or the improvements thereon) contained on the other side of the line so far as the same was run. I therefore consider the decree of the County Court correct on the merits, and that so far as it decrees releases, it is a decree of mutual and simultaneous releases.* It 604 was not *necessary to make the representatives of James Moon parties in order to this end; nothing being more common than for one man to covenant that an *240 other shall do a particular act, and for the Court of Chancery to decree that one man shall procure an act to be done by another, as the condition of the relief which is granted to him.
My opinion is, that the decree of the Chancellor be reversed, and that of the County,Court affirmed.
JUDGE FLEMING.
It appears from a survey and plat made under an order of the County Court of Berkeley, that the tract of land held by James and Jacob Moon in joint-tenancy, which is now the subject of controversy, contains 796 instead of 675 acres, the supposed quantity at the institution of this suit.
It appears from the evidence in the record, that James Moon, the elder brother, during the infancy of Jacob, the appellant, made a partial, and unequal division of the land; sold and convej'ed his moiety to Magnus Tate; and (whatseems very material) took an over proportion of the improvements, and most valuable land lying on Middlecreek; of which Jacob, when he came of age, complained, and threatened to compel another division of the land; and that he, for the consideration of eleven pounds, consented to the division made by his brother James; so far as it extended through the cleared lands; which is supposed to be from the letter A. to the letter B. in the said plat, but no farther.
The decree of the County Court of Berkeley, after the return of the survey and plat, rendered the 8th of May, 1798, ordered, “that the line from A. to B. and from B. to E. be established as the division line,” which should give to each party 398, being a moiety of the whole tract of 796 acres; and directed an exchange of releases between the parties; which I am of opinion was perfectly correct. But this decree was reversed by the District Chancery Court of Staunton; which decreed and ordered, that the appellee (the appellant here) do release unto the appellant his right to the land north of the line A. B. mentioned in the said transcript, and that the appellant re-605 lease to the *appellee all the land south of the said line, &c. which would give to the present appellee 504 acres, and leave to the appellant 292 acres only. I therefore concur in the opinion that the decree of the Superior Court of Chancery ought to be reversed, and that of the County Court affirmed.

Note. The decree of the County Court was, “that the defendant execute a release to the plaintiff for the land to which said M’Donald claims title to the north of the said lines,A. B. and B. E., containing’ one half the tract in the hill mentioned, amounting to 398 acres; and tha,t the said M’Donald shall execute a release, and procure the said James Moon to join him in such release, to the defendant, for the land to the south of the division lines aforesaid.” — Note in Original Edition.